The next case on the packet is 524-1117, People v. Heineken-Ellis. Okay, Mr. Hanson, on behalf of the defendant. Good afternoon, your honors. May it please the court, counsel. I'm Craig Hanson, representing the appellant, Mr. Heineken-Ellis. As an initial point, you might notice that our hearing aids, they don't work so great sometimes, so if I'm stepping on you, please don't consider approving this on behalf of my client. I'll do my best. Did you hear about my argument this morning? No. Well, the acoustics in here are always so lovely. I'm just being funny with you. I had a gentleman this morning who didn't hear me well, so we got into it. All the way, your honor. You started off on the right foot there. This is a circumstantial constructive possession case in which no forensic evidence tied Mr. Ellis to the firearm in question. No witnesses saw him holding or burying a firearm. This case depends entirely on inference. Against this backdrop, the jury was permitted to use other crimes evidence against Mr. Ellis without any limitation. Additionally, the jury was not required to find that the possession or the alleged possession was knowing, which is an element of the offense. These errors deprived Mr. Ellis of a fair trial, and we ask that this court vacate his conviction and sentence and remand for a new trial. By way of a road map, I would like to begin by addressing each of these errors in turn before proceeding to the element that is common to each, which is the closely balanced nature of the case. Here, the jury was improperly instructed as to how it may consider other crimes evidence. Here, the jury was instructed to consider other crimes evidence admitted by way of stipulation like any other evidence. Not once, but twice. In People v. Cabot, the 4th District considered a similar case where the defendant was charged with the arbitrary criminal, like Mr. Ellis was in this case, and the trial court failed to place any limitation on the jury's consideration of that evidence. The Cabot court held that by instructing the jury that it should consider the defendant's stipulation to other crimes, along with all the other evidence, that the court incorrectly stated the law and implicitly authorized the jurors to consider that other crimes evidence in an unrestricted manner. While the court does not have an independent duty to instruct the jurors or provide a limiting instruction in this case, when the court does so, it must do so accurately. This court did not. You're citing the Cabot case now? Yes, Your Honor. But in that case, the error was held to be harmless. The error was... Was not harmless? It was not harmless. The instruction to the jurors was not held harmless. No, the instruction to the juror was an error. The instruction to the jury was the error, the complaint of error, and the Cabot court found that that was the error. Right, but ultimately, did the court find it was a reversible error? Yes, the court did find it was a reversible error. Well, the Cabot court considered... The defendant, Cabot, was charged with two crimes. Omtobitual criminal and I believe it was a drug possession charge. The omtobitual criminal charge was reversed as void based on the overturning of a predicate offense. But the evidence pursuant to the omtobitual criminal charge, specifically the defendant's prior convictions, were admitted to the jury and the jury was able to consider those against the remaining charge. But by overturning the omtobitual criminal charge, the Cabot court did not have the opportunity to really consider whether the other crimes evidence was prejudicial as to the omtobitual criminal charge. It was only left after reversing that conviction to look at the remaining charge, which in this case was the omtobitual criminal charge. Okay. The Cabot case, was that a jury instruction case then? Yes, Your Honor. Okay. It was a jury instruction case that specifically looked at, by way of stipulation, a defendant's prior convictions. Your claim of error as to one of the jury instructions in this case is that there was no limiting instruction given? That is correct. That is the case that we're discussing in Cabot and that did not come in here. Mr. Ellis stipulated to his prior convictions. That evidence, of course, we're not arguing that that evidence wasn't admitted properly. This is an omtobitual criminal case. It's got a new name. I think we all know the offense we're discussing here. What about the issue of waiver in your case? In terms of waiver? Yes. This is a plain error case. The court erred. We raised it under two theories. It's an error by the court where the court instructed the jury and the court erred in instructing the jury in the law. It's also ineffective assistance of counsel where counsel did specifically decline to seek a limiting instruction. Right. Couldn't she waive that right and rely on 101? 101 was not given. 101 was not given. Evidence admitted for one purpose may not be used for another purpose. That's the extent of the language in 1.01. That was actually admitted. Counsel argued for that to be removed. There was actually a long discussion about if the state was the only part of it that got that right. That's why I'm asking you about waiver. There was a discussion about that particular language and you think then it's ineffective assistance of counsel as opposed to trial strategy to have omitted that? To have omitted that instruction? We believe it was not reasonable trial strategy. Also, the error here is that the court instructed the jury improperly. That's not that it didn't give the instruction. The instructions do exist, but when the court instructed the jury as to how it should consider the stipulation, it did so improperly. That's the error. We consider counsel to be ineffective here because it's not reasonable trial strategy. There was a corresponding prejudice. Sorry to interrupt. Your Honor. The instruction here that should have been given was to limit the jury's consideration. The purpose of that is to preclude the jury from considering that evidence as propensity or evidence of bad character. That's why 3.13X exists specifically for this case. It serves to limit a juror's improper reasoning. Here, where the evidence was closely balanced, the jury's improper consideration of Mr. Ellis' prior convictions resulted in a prejudice. It's entirely possible that before the trial court's error and counsel's failure to seek a limiting instruction, the outcome may have been different. As to the second jury instruction issue, we understand that the trial court here erred by never instructing the jury on the required mental state. We also allege this as both an error by the trial court and because the trial court improperly instructed the jury as to the elements of the offense and counsel's failure for not instructing the jury, seeking that instruction. I'd like to move on quickly to the evidence here. In this case, the evidence was closely balanced. The question before this court is not whether there was some evidence, but rather, was the evidence balanced in a way that an error would tip it? Here, there was no direct evidence. Did I just hear you say it was closely balanced? It wasn't. It was not closely balanced. I apologize for not enunciating. That's okay. There was no forensic evidence. The state stipulated to the fact there was no forensic evidence. No one claimed to have seen Mr. Ellis in possession of a firearm. No one claims to have seen him burying a gun. One witness was 100 yards away. He claimed to have seen Mr. Ellis with a black bag. No witness identified that bag as being the one bag that was buried. The responding trooper, who claims to have seen a figure in the field, didn't reveal that for 15 months, did not record it at the time, and only remembered it on the eve of trial, after reviewing his dash cam. This case relies clearly on circumstantial and inferential evidence here. This was a 25-minute jury verdict. Yes, Your Honor. The jury was, I would say, pretty convinced if they returned a verdict in 25 minutes. It would take them that long to read the instructions, almost. May I respond, Your Honor? Yes, absolutely. Well, when the jury is not instructed that they are required to find the possession with which Mr. Ellis, I see my time's up, may I continue? Absolutely. They're not required to find that element, that the state's been relieved of that burden. That's one thing less they have to worry about. And then, when they're already, they're not told that they have limits on how they may consider Mr. Ellis' prior convictions, they can just convict him because he's a bad guy. That's the specific danger that the limiting instructions and our distaste for propensity evidence are designed to cure. And so your request for relief is what? We would ask that this Court respectfully reverse Mr. Ellis' conviction and sentence remand for a new trial. Alternatively, as explained in the brief, this Court should remand for the correct calculation of pre-sentence custody credit. Okay, thank you, Mr. Hanson. You'll have a few minutes after Ms. Jones makes her argument. Thank you, Your Honor. Hey, Ms. Jones, I almost cut you out of your argument today. Welcome, we don't often get you in court. I try. Actually, I didn't write this brief. I'm arguing for another attorney in my office. Can I ask you a question right off the bat? Can you help me to distinguish the Cabot case a bit? Yes, the Cabot case is extremely distinguishable because in that case he was charged with two things. He was charged with possession... Would you just put your name on the record? Oh, I'm sorry. I jumped in, it was my fault. Ms. Jones, on behalf of the State. As I was saying, the Cabot case is distinguishable because in that case it involved the charge of possession of cannabis and armed habitual criminal. And the cases were tried together. So when the Court instructed or read the stipulation about the two felony convictions that are a required element of the offense of armed habitual criminal they didn't... He said, you can consider this as any other evidence. He did not limit that to just the armed habitual criminal statute. So it goes up on appeal and the appellate court first vacated the armed habitual criminal conviction on the basis that it was based on part of a AUUW charge and therefore that couldn't be a predicate offense for armed habitual criminal. The Court then went on to consider whether the Court's statements were improper because it allowed the jury to use evidence of other crimes beyond the limited purpose of satisfying the predicate felony elements of AHC. And that is because there was another charge. That is because there was a cannabis charge. In this case, the only charge is AHC. And the jury had to consider the fact that he had felonies. It's an element of the offense. So there's no possibility that they're going to confuse. Oh, well, can I consider the fact that he's a convicted felon for purposes of cannabis or purposes of something else? That doesn't exist here. The only thing that they had to consider and both parties said the only issue really in this case is whether there's possession. And the distinction is further highlighted when you consider the case of People v. Johnson which have it relied upon. In reaching its decision. In that case, the defendant was charged with domestic battery and unlawful possession of a weapon by a felon. The State allowed, and this got very convoluted, and the judge, the Court actually said that these two cases' claims should not have been tied together. They should not have been joined for trial because on the domestic battery charge they put in evidence of other incidents of domestic battery pursuant to statute. And they put in the fact that he was a convicted felon for the unlawful possession of weapon charge. But the Court didn't instruct as to how you could use, how the jury could use the domestic violence charges or how they could use the prior felony charges. And the Court said that there's no way for the jury, I mean, the Court could have instructed, gave a very convoluted and confusing instruction, but they didn't do any of that. And so the Court says there's no way to tell whether the jury applied the wrong thing to the wrong count, to the wrong charge. That's not the facts of our case. I also would like to discuss Pupil v. McGill, which was a subsequent case to Cabot. And in that court, the Court specifically said, in Johnson we held, without limiting instructions, the jury might use the evidence admissible only as to one charge as evidence of his guilt of the other charge. They say, interestingly, we did not hold, at least explicitly, that the failure to provide a limiting instruction on the predicate offense for UPW prejudiced the defendant as to UPW. Now that court then went on to say, well, we don't have to, they concluded that the holding in Cabot actually was a substantial extension of Johnson and not a straightforward application. But they ultimately said, we don't have to really flesh that out as to whether Johnson or Cabot requires this because they distinguish the case on entirely different grounds. I'd like to point out that in this case, the only jury instruction that they claim should have been given to quote-unquote limit the consideration of this felony, of the prior felons, is 3-13X. And when the Court read the stipulation, he did say, you can use this evidence as any others, which is appropriate because it's an element of the offense. So they have to use it for substantive evidence of one element of the offense. But I'd like to point out that the proposed jury instruction that they say was not given, and also, Your Honor, it is also is waived. This whole argument is waived, and they can't claim plain error because the attorney specifically said, I don't want that instruction. And it's not ineffective assistance of counsel because it was trial strategy. She specifically said on the record, I don't want this instruction because it brings too much attention to the fact that he's got felony convictions. That's a perfectly appropriate reasoning and trial strategy with regards to a claim like this. But back to the jury instruction. That jury instruction first tells the jury that ordinarily in cases, evidence of other crimes cannot be used for purposes of credibility. It then specifically says, that is not true in this case. Because your instruction states, however, in this case, and then goes on to instruct the jury that you may consider evidence of defendant's prior conviction of a qualifying criminal offense for the purpose of determining whether the state has approved that proposition. So the jury instruction they say wasn't given says nothing more than what the judge already told them. You can consider in this particular case, on this particular charge, you are allowed to consider his prior felonies. Not only allowed, but you have to consider his prior felonies as an element of the offense. I'm going to address... So you don't think that there would be a reason to give a limiting instruction at all under this particular crime? I don't think that it would be inappropriate to do so, but I don't think it's error, plain or otherwise, not to give it... Well, it might be error to give it if the judge had already told them what they can use it for. It might be error not to give it. Well, the judge had already told them you can use this evidence. So the jury instruction in this case did nothing more than what the judge had already told them. And it would support your argument of a trial strategy. Pardon? That would support your argument of trial strategy. Well, yes. And on top of that, the attorney, the attorney specifically said, I don't want it. I don't want to draw attention to it. And nobody argued it. In fact, the jury wasn't even instructed what the felonies were. Those convictions, certified copies of those convictions, were admitted into evidence, but they weren't given to the jury. They weren't told what they were. All the jury was told was he has two qualifying offenses. What about the issue of knowing, not including that? I don't want you to run out of time before you get to that, in the Hampton case. Well, Your Honor, Hampton is distinguishable. Okay. And the reason is, in that case, the gun was found under the driver's seat of the vehicle the defendant was driving. The trial court, the defendant's girlfriend said, oh, that gun's mine. And I put it under the seat because I had a bunch of kids at a party, and I didn't want the kids in the party to have a gun accessible. So she put it in the car. And she said she let the defendant use the car and didn't tell him that the gun was under the seat. And the court instruction to the jury did not contain the word knowingly. And under those particular facts in this case, because there were competing versions of events that went directly to the defendant's knowledge of the gun under a seat, the court found that the failure to specifically advise the jury of a knowledge requirement required a new trial. But those aren't the facts of our case. But you don't think knowing is an element of the armed habitual criminal? No, Your Honor, I think it is. And I think that the jury was told that. Counsel said that this case is a circumstantial constructive possession case. Well, the jury instructions that they got instructed them on what the definition of possession was. And for constructive possession, it has to be possession that he has both power and intention to exercise control. And the specific definition of knowledge under the statute says that when the law provides that acting knowingly suffices to establish an element of an offense, that element also is established if the person acts intentionally. So by informing the jury that possession includes an intentional act, the court properly informed them. On top of that, Your Honor, in terms of closely balanced, there's no way that this... I mean, under either the first claim or prejudice for ineffective, the ultimate question is whether there's a reasonable probability that the outcome would have been different without the error. In other words, if they had instructed knowingly, specifically stated that in the instruction, then this evidence would have led to an acquittal. And there's no way this evidence would have led to an acquittal. I mean, everything about this case reflects that he knew there was a gun. From the first time, he fled from the police, and, you know, people who are innocent don't flee from the police. They have nothing to hide. They don't flee from the police. He was then... And the only known compromise that was ever found on him, his wife, or in the bag or the car backpack was this gun. So why was he fleeing? He knew he had a gun. I'm sorry, may I continue? The defendant showed... So he showed guilty knowledge. They crashed his car. He's looking for something, according to the evidence. He's frantically searching this car. He threw a red bag. He's seen in possession of a black bag, although no one saw him. I want you to specifically mention the dash cam video. For not only did the officer say that he saw a person in the field, but the dash cam video, if you look at the wide-angle one, and look to the left-hand screen, you can see a person in black. You can see them in the field. You can see them walking toward the opening, and that's the area where the gun was buried. You don't bury something unless you know that you don't want to be found with it. And then he hid. He hid in a culvert. And it was buried in a very shallow area. And then he apologized to his wife. He didn't have time to bury it. But it was also very shallow and buried, and the dirt was clearly freshly dug. If you look at this, the evidence was not closely balanced, and there's no way that there's a reasonable probability under these facts that the jury would have acquitted this man of armed eventual crime. Do you have any response to your opponent's brought up, the fact that the officer's dash cam video of the officer that was involved with that didn't mention seeing anyone in the field for a number of months? Well, and he explained why he didn't, Your Honor. He didn't mention it because he had stopped, pulled up to the side of the road because his wife was lying in the ditch. He got out to see whether she was okay, and she ran off. She took off. And another officer that was at the police station, which is right there close by, pulled up, and a chase ensued over both northbound and southbound lanes of I-57. The officer tackled the woman in the median in between in order to make sure she didn't cause harm to herself or another. So the master sergeant, whose dash cam video, he explained, when I did my police report, I had to... I was looking at the use of force. That's what my report was all about. I had to document that and explain that. He didn't even know that they had found the buried gun until some time later. Thank you. Thank you, Mrs. Jones. Mr. Hanson? May it please the court, counsel? I think I'd like to start with talking about Kavett there. Kavett didn't say anything about whether the prejudicial effect of other crimes evidence is only improper when a jury considers that against another charge. In both cases, evidence of the defendant's prior crimes, both admitted by stipulation. So the juries in both cases were not informed as to the specific nature of the charge, which brings Kavett and this case closer together. But the only charge left to... for the court to analyze was the drug possession. And Kavett is completely silent on whether using a properly admitted record of other crimes against a defendant when faced with a charge like armed habitual criminal, and that's still the case, whether that's inappropriate. The issue here is whether the jury used it inappropriately in determining propensity. Jury instruction 3.13X is specifically designed where evidence is brought in because it's an element of the charge and is limited to proving, to determine for the jury's consideration as to whether the state met that element, meaning the previous or the prior convictions. We know that jurors are not permitted to use evidence of other crimes as evidence of bad character or propensity, which is exactly what 3.13X is designed to prohibit. How does that jury instruction, 3.13X, differ from what the court told the jury? It differs because it's very clear in saying you have this evidence and you may use it specifically or you cannot use it for any other purpose than to determine whether or not the state has met its burden. I'm paraphrasing here. Yeah, but the paraphrase I think is not correct. Mr. Jones, that is the instruction to us, I think. A lot of that is focused on the portions of the instruction that are administered when a defendant testifies, not when it is admitted specifically. It's supposed to be given when it's admitted only for the purpose of proving the element. Okay, so you're saying she read the wrong section to us. I would not mischaracterize that. That seemed to be the focus, though. Okay. It started with that. So you believe that 3.13X has better limiting language than what the trial judge gave? I'm not saying that. The committee notes say that. That's why we have the instruction. The jurors are not given committee notes. They are not. It's not an opinion matter. The jury instructions, or the committee notes with the jury instructions say this is why this exists. But the actual language is not so narrow as to limit the jury to the focus that you're pointing us to, I think. I think if I understand you correctly, Your Honor, the language does not tell jurors you cannot use this as evidence of bad character or propensity. It is not that specific. It is, in fact, the opposite, and you may only use it for this purpose. Unless it's being admitted where a defendant testifies, in which case, it may go to credibility. But 13.13... In fact, part of the instructions you read dealt with credibility, and we don't have that issue here, right? No, he did not testify. Okay. No, that's not part of this issue. Okay. What about this fact that the defense counsel specifically requested that the language be removed? And then abandoned that strategy in closing arguments. I understand, but your argument is a jury instruction argument and an ineffective assistance of counsel. Yes, in part. I don't understand why there isn't a waiver of this issue. If we determine it's trial strategy, then there can be waiver. Is that true? If you determine this was trial strategy, that defeats the claim, of course. We're arguing that it's not sound trial strategy. Did I say my time's up? Okay, but I'm trying to differentiate out, and I'm not doing a good job. Ineffective assistance of counsel is deficient performance plus prejudice. Right? Yes. Under Strickland. Yes. If you have no deficient performance, or if you have trial strategy, there is no deficient performance. If you have... I believe, Your Honor, just to be clear on what we're discussing, a reasonable trial strategy, a solid trial strategy, a strategy that has basis. I don't believe that bad trial strategy is encompassed by our view of mere trial strategy. Edmund, I'll agree with you. I just want to clarify that. But yes, the statement is absolutely correct. And it's true that you're asking us to review both of these under plain error. Yes, Your Honor. Well, it's ineffective assistance of counsel, and then, of course, the clear error by the trial court in twice instructing the jury improperly according to the law by not giving them a limiting instruction or incorrectly instructing them as to how they may consider that evidence, and then failing to instruct the jury properly on the elements of the offense. And those are both clear error. Those are plain error. Okay. Does that clarify? Yes. Does that answer your question, Your Honor? Yep. Okay. I think we're done, Mr. Hanson, on this case. Thank you, Your Honor. Thank you both for your arguments here today. It's an interesting case. We'll take the matter under advisement. We'll issue an order in due course. We appreciate you coming.